**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

---

**CLIFFORD SCOTT TAYLOR**
1752 Park Avenue
Baltimore, Maryland 21217

*Plaintiff,*

**v.**

**MAYOR AND CITY COUNCIL OF
BALTIMORE**
3800 E. Biddle Street
Baltimore, Maryland 21213

Serve On: Statutory Agent
Ebony Thompson, City Solicitor
City Hall – Room 250
100 N. Holliday Street
Baltimore, Maryland 21202

and

**POLICE OFFICER JAMES KLEIN, III**
Baltimore Police Department
Western District
1034 North Mount Street
Baltimore, Maryland 21217

*Defendants.*

Civil Action No. _____

---

**COMPLAINT AND JURY DEMAND**

Plaintiff, Clifford Scott Taylor ("Plaintiff" or "Mr. Taylor"), by and through his attorneys,

James M. Ray, II and Paragon Law Firm, PLLC, brings this civil action against Defendants Mayor

and City Council of Baltimore and Police Officer James Klein, III for violations of Plaintiff's rights

under 42 U.S.C. § 1983, the Fourth Amendment to the United States Constitution as incorporated

against state actors through the Fourteenth Amendment, Articles 24 and 26 of the Maryland Declaration of Rights, and Maryland common law, and states as follows:

## PARTIES

1.      Plaintiff Clifford Scott Taylor is an adult resident of Baltimore City, Maryland. Mr. Taylor resides at 1752 Park Avenue, Baltimore, Maryland 21217. Mr. Taylor is a Black man, a disabled veteran, and a member of the community in which the events described below occurred.

2.      Defendant Mayor and City Council of Baltimore (the "City") is a municipal corporation and local governmental entity organized under the laws of Maryland. The City may be sued in its own name and is responsible for the policies, customs, practices, training, supervision, discipline, deployment, retention, and/or oversight that caused or contributed to the constitutional violations alleged herein.

3.      At all times relevant to this Complaint, the Baltimore Police Department ("BPD") and its officers acted as law-enforcement officials in Baltimore City, Maryland. BPD officers, including Defendant Officer James Klein, III, exercised police powers, including the authority to stop, detain, seize, arrest, transport, charge, and use force against members of the public.

4.      Defendant Police Officer James Klein, III ("Officer Klein") was, at all times relevant to this Complaint, a BPD officer assigned to the Western District and identified in police and court records as ID or sequence number K943. Officer Klein is sued in his individual capacity for the federal claims and in his individual and/or employee capacity for the state constitutional and common-law claims.

5.      At all times relevant to this Complaint, Officer Klein acted under color of law, under color of the statutes, ordinances, regulations, customs, and usages of Maryland and Baltimore City, and within the scope of his employment, agency, and authority as a BPD officer.

6.     At all times relevant to this Complaint, each Defendant acted directly, jointly, and/or through agents, servants, employees, policymakers, supervisors, and officers, and each Defendant caused, participated in, ratified, condoned, or was a moving force behind the unlawful conduct described herein.

## JURISDICTION & VENUE

7.     This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. §§ 1983 and 1988.

8.     This Court has supplemental jurisdiction over Plaintiff's Maryland constitutional and common-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same case or controversy as the federal claims.

9.     This Court has personal jurisdiction over Defendants because the events and omissions giving rise to this action occurred in Maryland, Defendants reside in or conduct official business in Maryland, and Defendants caused injury to Plaintiff in Maryland.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to the claims occurred in Baltimore City, Maryland, within the District of Maryland.

## EXHAUSTION AND CONDITIONS PRECEDENT

11.     No administrative exhaustion requirement bars Plaintiff's claims under 42 U.S.C. § 1983.

12.     To the extent any notice requirement applies to Plaintiff's Maryland constitutional or common-law claims, Plaintiff has complied with all applicable conditions precedent, including by providing written notice of his claims to the appropriate governmental entities and officials on

or about November 6, 2025, pursuant to the Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. §§ 5-301 et seq., and, to the extent applicable, the Maryland Tort Claims Act.

13.    Defendants have had actual notice of the incident, the involved officer, the alleged injuries, the alleged constitutional violations, and the need to preserve evidence, including body-worn camera footage, in-car camera footage, CAD/radio records, charging documents, use-of-force records, personnel-identification materials, and related investigative materials.

## FACTS COMMON TO ALL COUNTS

14.    On April 15, 2025, at approximately 4:49 p.m., Mr. Taylor was driving home from work in Baltimore City, Maryland.

15.    Mr. Taylor was traveling near his home on and around Laurens Street and Park Avenue. His home is located at 1752 Park Avenue.

16.    Mr. Taylor observed a BPD police vehicle behind him from a distance.

17.    When Mr. Taylor reached the area of Laurens Street and Park Avenue, he pulled toward the median area and attempted to allow the police vehicle to pass. The police vehicle did not pass. Mr. Taylor attempted to wave the officer forward, but the officer still did not pass.

18.    Mr. Taylor then turned around and parked near his home on Park Avenue. Before Officer Klein began issuing commands, Officer Klein had not activated emergency lights or siren, had not used any clear marked-police signal requiring Mr. Taylor to submit to a traffic stop, had not activated or preserved any known dash-camera stop sequence, and had not otherwise followed ordinary traffic-stop procedures that would have communicated to a reasonable person that he was being lawfully pulled over.

19.    There was no obvious deployment of emergency lights, siren, or pursuit before the encounter escalated.

20. Officer Klein pulled his police vehicle parallel to Mr. Taylor's vehicle, facing the opposite direction. Without first clearly initiating a lawful traffic stop, without explaining any alleged traffic violation, and without giving Mr. Taylor a lawful basis for the detention, Officer Klein yelled words to the effect of "stay in the car" and attempted to force Mr. Taylor to submit to his authority.

21. By commanding Mr. Taylor to remain in his vehicle and later to show his hands while displaying a firearm, Officer Klein seized Mr. Taylor within the meaning of the Fourth Amendment even though Officer Klein had not properly initiated a traffic stop and had not articulated any lawful basis for restraining Mr. Taylor's liberty.

22. Mr. Taylor asked what Officer Klein had said and attempted to understand why Officer Klein was engaging him. Officer Klein did not provide a lawful explanation for the stop or detention.

23. At all times relevant to the encounter, Mr. Taylor was unarmed. Mr. Taylor did not violate any law or do anything that objectively justified Officer Klein's decision to seize him at gunpoint. Mr. Taylor did not threaten Officer Klein, did not threaten any member of the community, and did not attempt to flee.

24. Officer Klein immediately escalated the encounter by exiting his patrol vehicle with his service weapon drawn in the low-ready position and pointed in Mr. Taylor's direction.

25. Officer Klein then raised, displayed, and/or pointed his firearm toward Mr. Taylor despite the absence of any objectively reasonable basis to believe that Mr. Taylor posed a threat of death or serious bodily injury to Officer Klein or anyone else.

26. Mr. Taylor's hands were visible. Mr. Taylor held his hands out and said words to the effect of, "But you see my hands." Nothing in Mr. Taylor's hands appeared to be a weapon.

27.    Mr. Taylor repeatedly asked Officer Klein why he was being stopped, what he had done, and what lawful order Officer Klein believed he had issued. Officer Klein did not provide a meaningful or lawful explanation and instead continued to hold Mr. Taylor against his will at gunpoint.

28.    Instead of de-escalating the encounter, explaining the basis for any traffic stop, or using ordinary communication skills, Officer Klein continued to brandish his weapon, issue escalating commands, and threaten Mr. Taylor with arrest and force.

29.    Officer Klein threatened Mr. Taylor, including yelling, "I am going to fucking kill you." Mr. Taylor reasonably feared that Officer Klein was going to shoot and kill him.

30.    Mr. Taylor screamed for help from neighbors and family members because he feared for his life. Mr. Taylor's wife and at least one neighbor came outside and witnessed portions of the incident and its aftermath.

31.    At no time before Officer Klein drew, displayed, or pointed his firearm did Mr. Taylor assault Officer Klein, threaten Officer Klein with a weapon, take a fighting stance, charge Officer Klein, or engage in conduct that justified the threatened use of deadly force.

32.    Officer Klein's use of a firearm to compel compliance during a disputed traffic encounter was a high-level, non-contact use of force.

33.    Under accepted police practices, such force is not justified in the absence of a reasonably perceived threat of death or serious bodily injury.

34.    Officer Klein's conduct created a terrifying, dangerous, and unconstitutional seizure from what Officer Klein later characterized as a minor traffic encounter.

35.    When backup officers arrived, Mr. Taylor continued to ask for an explanation and requested a supervisor.

36.    A supervisor, Sgt. Aguilera, responded. Rather than correcting Officer Klein's escalation or requiring an explanation of the alleged traffic violation, the supervisor authorized Mr. Taylor's arrest for disorderly conduct and failure to obey a purported lawful order.

37.    Mr. Taylor was arrested outside his home in front of his wife, neighbors, and members of the community.

38.    Officer Klein and/or other BPD officers caused Mr. Taylor to be transported to the BPD Western District and then to Central Booking/CBIF. Mr. Taylor was held overnight and deprived of his liberty for nearly a full day.

39.    The criminal charging materials identify Officer Klein as the complainant and/or arresting officer and identify local incident number 7250404713.

40.    The criminal charging materials charged Mr. Taylor with disorderly conduct and failure to obey an allegedly reasonable and lawful order, namely an order to "calm down."

41.    Mr. Taylor was also issued traffic citations, including citations for reckless driving, driving in excess of reasonable and prudent speed, and failure to stop at a stop sign.

42.    Officer Klein's statement of probable cause attempted to justify the arrest and prosecution by characterizing Mr. Taylor as aggressive, erratic, and noncompliant and by claiming that Officer Klein attempted to de-escalate the encounter.

43.    Officer Klein's narrative materially omitted and/or mischaracterized critical facts, including that Officer Klein had not clearly initiated a traffic stop before Mr. Taylor parked at his home, that Officer Klein immediately drew and displayed his firearm, that Mr. Taylor's hands were visible and empty, that Mr. Taylor repeatedly asked why he was being stopped, that Officer Klein continued to detain Mr. Taylor at gunpoint without explanation, and that Officer Klein failed to explain any lawful basis for the seizure before escalating the encounter.

44.    Officer Klein's narrative also mischaracterized Mr. Taylor's fear response and lawful verbal challenges as disorderly or aggressive conduct, when in reality Mr. Taylor was responding to an armed officer who had escalated an unknown and unjustified encounter by pointing or displaying a firearm and threatening lethal force.

45.    Upon information and belief, Officer Klein and/or BPD failed to create, preserve, disclose, and/or produce a complete and accurate use-of-force record for Officer Klein's threatened use of deadly force and high-level firearm display.

46.    Upon information and belief, Officer Klein and/or other BPD officers retained Mr. Taylor's vehicle keys and/or other property after his arrest, returned the keys to Mr. Taylor's wife late that evening, and did so under circumstances that raised reasonable concern that Mr. Taylor's vehicle or property had been accessed or searched without lawful authority.

47.    The charges against Mr. Taylor were ultimately dismissed, nolle prossed, and/or otherwise terminated in his favor without conviction.

48.    As a direct and proximate result of Defendants' conduct, Mr. Taylor suffered loss of liberty, fear for his life, humiliation, emotional distress, mental anguish, anxiety, trauma, damage to his dignity and reputation, expenses, and other damages to be proven at trial.

49.    Before the April 15, 2025 incident involving Mr. Taylor, Officer Klein had been involved in an October 9, 2024 officer-involved fatal shooting in Baltimore City.

50.    As a result of the criminal proceeding against Mr. Taylor and the Brady/Giglio disclosures the Office of the State's Attorney for Baltimore City was required to make, the State's Attorney's Office informed Mr. Taylor's counsel that, at the time of Officer Klein's encounter with Mr. Taylor, Officer Klein was being investigated in connection with an officer-involved fatal shooting.

8

51.     Thus, before Officer Klein confronted Mr. Taylor on April 15, 2025, BPD and City policymakers, supervisors, and/or final decisionmakers knew or should have known that Officer Klein had been involved in a serious force incident and was associated with a pending force-related investigation.

52.     Despite that notice, Defendants permitted Officer Klein to continue armed uniformed patrol and public enforcement duties without adequate restriction, supervision, monitoring, retraining, discipline, or remedial intervention.

53.     The constitutional harms suffered by Mr. Taylor were the highly predictable result of allowing an officer with a known pending serious force-related matter to continue street enforcement without sufficient supervision, de-escalation retraining, use-of-force accountability, firearm-display reporting, and probable-cause oversight.

**Count I**
**(42 U.S.C. § 1983 - Fourth Amendment Unreasonable Stop, Detention, Arrest, and Seizure)**
**(Plaintiff v. Defendant Officer Klein)**

54.     Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

55.     The Fourth Amendment protects individuals from unreasonable searches and seizures, including unreasonable traffic stops, investigatory detentions, arrests, and custodial seizures.

56.     At all relevant times, Officer Klein was acting under color of state law.

57.     Officer Klein seized Mr. Taylor by show of authority, commands, display and threatened use of a firearm, physical detention, handcuffing, arrest, transport, and continued custody.

58.     Officer Klein lacked reasonable suspicion and/or probable cause to seize, detain, arrest, and cause the continued detention of Mr. Taylor.

59. Even if Officer Klein had a lawful basis to initiate a limited traffic stop, the scope, manner, duration, escalation, firearm display, handcuffing, arrest, and custodial detention of Mr. Taylor were objectively unreasonable under the totality of the circumstances.

60. Officer Klein intentionally, knowingly, recklessly, and/or with deliberate indifference violated Mr. Taylor's clearly established Fourth Amendment rights.

61. Officer Klein's conduct was deliberately indifferent to Mr. Taylor's rights because Officer Klein knew he had not clearly initiated a lawful traffic stop, knew he had not explained any alleged violation, knew Mr. Taylor's hands were visible and empty, knew Mr. Taylor was asking why he was being detained, and nevertheless continued to hold Mr. Taylor at gunpoint and caused his arrest and custodial detention.

62. Officer Klein further acted with deliberate indifference by treating Mr. Taylor's fear, questions, and verbal objections as grounds to escalate force and arrest, rather than as reasons to de-escalate, explain the basis for the stop, and refrain from extending a seizure unsupported by reasonable suspicion or probable cause.

63. As a direct and proximate result of Officer Klein's conduct, Mr. Taylor suffered damages as alleged herein.

64. At all times relevant, Officer Klein was operating under the color of law, and within the scope of his employment with the Baltimore City Police Department.

**Count II**
**(42 U.S.C. § 1983 - Fourth Amendment Excessive Force)**
**(Plaintiff v. Defendant Officer Klein)**

65. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

66. The Fourth Amendment protects individuals from excessive force during stops, seizures, arrests, and other police encounters.

67.    Officer Klein purposely and intentionally used force and threatened deadly force by drawing, displaying, raising, and/or pointing his firearm at Mr. Taylor and by using that firearm display to compel compliance during an unknown and unjustified encounter.

68.    Officer Klein's use and threatened use of force were objectively unreasonable. Mr. Taylor was unarmed, outside his own home, in daylight, with visible empty hands, and did not pose an immediate threat of death or serious bodily injury to Officer Klein or anyone else.

69.    Officer Klein had feasible alternatives, including ordinary communication, explanation of the alleged traffic basis, de-escalation, waiting for backup, issuing any appropriate citation, and refraining from pointing or brandishing a firearm absent a threat.

70.    Officer Klein intentionally escalated the encounter despite facts known to him at the time: Mr. Taylor was in a residential area near his home, had visible empty hands, repeatedly asked for an explanation, and had not displayed a weapon, assaulted anyone, threatened anyone with a weapon, or attempted to flee, or created any traffic violation justifying any stop.

71.    Officer Klein's threatened use of deadly force escalated the encounter, created the danger that followed, and directly caused Mr. Taylor's fear, distress, detention, arrest, and related damages.

72.    Officer Klein's conduct violated clearly established Fourth Amendment law prohibiting objectively unreasonable force and threatened deadly force against a non-threatening, unarmed, and innocent person.

73.    As a direct and proximate result of Officer Klein's excessive force, Mr. Taylor suffered damages as alleged herein.

74.    At all times relevant, Officer Klein was operating under the color of law, and within the scope of his employment with the Baltimore City Police Department.

11

## Count III
### (42 U.S.C. § 1983 - Fourth Amendment Unreasonable Seizure Pursuant to Legal Process / Malicious Prosecution)
### (Plaintiff v. Defendant Officer Klein)

75. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

76. The Fourth Amendment prohibits an unreasonable seizure pursuant to legal process unsupported by probable cause, including the claim commonly described as malicious prosecution under 42 U.S.C. § 1983.

77. Officer Klein caused and participated in the initiation and continuation of criminal and traffic proceedings against Mr. Taylor.

78. Officer Klein caused those proceedings by submitting, approving, adopting, and/or causing materially false, misleading, and incomplete statements concerning the April 15, 2025 incident.

79. The charging narrative omitted and mischaracterized facts material to probable cause, including the absence of a clearly initiated traffic stop before Mr. Taylor parked, Officer Klein's immediate firearm display, Mr. Taylor's visible empty hands, the absence of an objectively reasonable threat, Officer Klein's continued detention of Mr. Taylor at gunpoint without explanation, and Officer Klein's failure to explain a lawful basis for the detention before escalating the encounter.

80. The criminal charges and citations were unsupported by probable cause.

81. Mr. Taylor was seized pursuant to legal process, including by arrest, overnight detention, booking, criminal charges, traffic citations, and the obligations and restrictions imposed by those proceedings.

82. The proceedings terminated in Mr. Taylor's favor without conviction.

83.    Officer Klein acted intentionally, knowingly, recklessly, maliciously, and/or with deliberate indifference to Mr. Taylor's constitutional rights.

84.    As a direct and proximate result of Officer Klein's conduct, Mr. Taylor suffered damages as alleged herein.

**Count IV**
**(42 U.S.C. § 1983 - Municipal Liability Under Monell)**
**(Plaintiff v. Defendant Mayor and City Council of Baltimore)**

85.    Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

86.    Plaintiff does not seek to impose federal municipal liability on the City merely because Officer Klein was employed by or affiliated with BPD. Plaintiff seeks to impose liability because the City's own policies, customs, practices, failures, and deliberate indifference were moving forces behind the constitutional violations alleged herein.

87.    Before April 15, 2025, the City, BPD, and their final policymakers knew that BPD officers would routinely conduct traffic stops, investigatory detentions, arrests, searches, firearm displays, and uses of force against members of the public.

88.    The need for adequate training, supervision, discipline, monitoring, and accountability concerning the constitutional limits on stops, arrests, firearm displays, threatened deadly force, de-escalation, probable cause, truthful charging documents, and use-of-force reporting was obvious and known to the City.

89.    The City failed to train, supervise, monitor, discipline, and control BPD officers, including Officer Klein, concerning when an encounter becomes a seizure and when an officer must articulate the lawful basis for the seizure. This failure is evidenced by Officer Klein's conduct toward Mr. Taylor, including attempting to pull over and command Mr. Taylor without first using

ordinary traffic-stop procedures, failing to explain any lawful basis for the stop, and then brandishing a firearm in Mr. Taylor's direction without a legal basis for escalating the encounter.

90. The City failed to train, supervise, monitor, discipline, and control BPD officers, including Officer Klein, concerning the constitutional limits on drawing, displaying, raising, or pointing a firearm during a traffic encounter involving an unarmed and non-threatening person.

91. The City failed to require meaningful reporting, review, investigation, and corrective action when officers display firearms as a means of compelling compliance, even though firearm display is a high-level use of force capable of causing severe constitutional and psychological harm. This failure is evidenced by the absence, upon information and belief, of a complete and accurate use-of-force record for Officer Klein's threatened use of deadly force against Mr. Taylor.

92. The City failed to train, supervise, monitor, discipline, and control BPD officers concerning de-escalation, tactical patience, respectful communication, and the handling of citizens who question or verbally challenge police conduct. This failure is evidenced by Officer Klein's refusal to provide a meaningful explanation to Mr. Taylor, his continued escalation despite Mr. Taylor's visible empty hands, and his treatment of Mr. Taylor's questions and fear response as grounds for further seizure and arrest.

93. The City failed to train, supervise, monitor, discipline, and control BPD officers concerning the distinction between protected verbal objection or fear responses and actual criminal disorderly conduct or failure to obey a lawful order. This failure is evidenced by the charging narrative, which converted Mr. Taylor's repeated requests for an explanation, fear of being shot, and verbal objections to being held at gunpoint into accusations of disorderly and aggressive conduct.

94.    The City failed to train, supervise, monitor, discipline, and control BPD officers concerning the duty to prepare truthful, complete, and non-misleading statements of probable cause and charging narratives. This failure is evidenced by Officer Klein's statement of probable cause, which characterized his conduct as de-escalation while omitting his immediate firearm display, the absence of a clear lawful stop before Mr. Taylor parked, Mr. Taylor's visible empty hands, and Mr. Taylor's repeated requests for an explanation.

95.    The City failed to adequately restrict, retrain, supervise, or monitor officers who had been involved in serious force incidents or pending force investigations before returning or keeping those officers in armed street-enforcement duties.

96.    BPD and City policymakers had actual or constructive notice that Officer Klein had been involved in the October 9, 2024 fatal officer-involved shooting and that, before the April 15, 2025 incident involving Mr. Taylor, Officer Klein was under investigation in connection with that serious force incident.

97.    Despite this notice, the City failed to impose adequate restrictions, supervision, monitoring, remedial training, or corrective measures before permitting Officer Klein to continue armed patrol duties and initiate public encounters such as the encounter with Mr. Taylor.

98.    The City's failures reflected deliberate indifference to the known and obvious risk that an inadequately supervised or inadequately retrained officer with a serious pending force-related history would again escalate a public encounter, misuse a firearm display, cause an unlawful seizure, and initiate unsupported charges.

99.    The constitutional violations suffered by Mr. Taylor were the direct, foreseeable, and highly predictable consequence of the City's policies, customs, practices, and deliberate indifference.

100. The City's policies, customs, practices, failures to train, failures to supervise, failures to discipline, failures to restrict, failures to monitor, and ratification or tolerance of unconstitutional conduct were moving forces behind the violations of Mr. Taylor's Fourth Amendment rights.

101. As a direct and proximate result of the City's conduct, Mr. Taylor suffered damages as alleged herein.

**Count V**
**(Maryland Declaration of Rights - Articles 24 and 26)**
**(Plaintiff v. All Defendants)**

102. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

103. Article 26 of the Maryland Declaration of Rights protects individuals from unreasonable searches and seizures. Article 24 protects individuals from deprivation of liberty and other protected interests except by due process and the law of the land.

104. Defendants violated Mr. Taylor's rights under Articles 24 and 26 by unlawfully stopping, seizing, detaining, threatening, arresting, charging, transporting, and causing the continued detention and prosecution of Mr. Taylor without lawful justification.

105. Officer Klein's conduct was reckless, grossly negligent, and objectively unreasonable, and without legal justification.

106. At all relevant times, Officer Klein acted within the scope of his employment and agency as a BPD officer and in furtherance of police functions for which the City is responsible under Maryland law, including through respondeat superior, indemnity, and/or applicable statutory obligations.

107. As a direct and proximate result of Defendants' violations of the Maryland Declaration of Rights, Mr. Taylor suffered damages as alleged herein.

16

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Clifford Scott Taylor respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

a.      Compensatory damages in an amount to be proven at trial;

b.      Punitive damages against Defendant Officer Klein in an amount sufficient to punish and deter malicious, reckless, and unconstitutional conduct;

c.      Reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988 and any other applicable law;

d.      Pre-judgment and post-judgment interest as allowed by law;

e.      Costs of this action;

f.      Declaratory and equitable relief as the Court deems appropriate; and

g.      Such other and further relief as justice and the nature of Plaintiff's claims require.

Respectfully Submitted,

**PARAGON LAW FIRM, PLLC**

By: /s/ James M. Ray, II
        James M. Ray, II (#19726)
        8233 Old Courthouse Road, Suite 100
        Vienna, Virginia 22182
        Phone: (703) 761-7676
        Fax:    (703) 783-7575
        jr@paragonfirm.com
        *Counsel for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff Clifford Scott Taylor demands a trial by jury as to all issues so triable.

/s/ James M. Ray, II
James M. Ray, II

17